IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| CATHERINE LICARI and VINCENT LICARI, | |
| Plaintiffs, | MEMORANDUM DECISION |
| | AND ORDER |
| vs. | |
| BEST WESTERN INTERNATIONAL, INC.; PARADISE MANAGEMENT, INC.; PARADISE RESOURCES, LC fka PARADISE RESOURCES, LTD.; and DON W. FULLMER dba PARADISE INN, | Case No. 2:11-cv-603 |
| Defendants. | |

Plaintiffs Catherine and Vincent Licari filed this action seeking damages that resulted when Ms. Licari allegedly contracted Legionnaires' disease during a 2009 stay at the Paradise Inn in Fillmore, Utah. Defendants Best Western International, Inc., Paradise Management, Inc., Paradise Resources, LC, and Don W. Fullmer move the court to enter summary judgment on a number of the Plaintiffs' claims. First, the Defendants have filed a Motion for Summary Judgment on the issue of duty (Dkt. No. 71). Second, Best Western moves the court to enter summary judgment on all the claims that are asserted against Best Western. (Dkt. No. 57.) Third, the Defendants have jointly filed a Motion for Summary Judgment on Ms. Licari's claim for medical expense damages (Dkt. No. 69). Finally, all of the Defendants move the court to enter summary judgment on Mr. Licari's claim for loss of consortium. (Dkt. No. 67).

The court held a hearing on these motions on March 5, 2013. At the hearing, the court denied without prejudice the Defendants' third Motion for Summary Judgment on Ms. Licari's claim for medical expense damages. The court held that the Motion concerned a damages issue that the court should more properly consider in a motion in limine and granted leave for the Defendants to refile their Motion as a motion in limine in the event that the Plaintiffs' claims went to trial. The court now addresses the three Motions that remain pending.

BACKGROUND

On July 19, 2009, Ms. Licari and her husband were traveling from California to Idaho and decided to stay overnight at the Paradise Inn in Fillmore, Utah. The Licaris allege that, during their stay, Ms. Licari was exposed to bacteria that caused her to contract Legionnaires' disease. Legionnaires' disease is caused by a waterborne bacterium and results in a number of symptoms, including pneumonia. The disease acquired its name after an outbreak among American Legion convention-goers who were staying at a hotel in Philadelphia in July 1976. During that outbreak, the disease caused illness in 221 individuals, with thirty-four deaths. (After Action Report, Ex. 10 to Pls.' Mem. in Opp'n to Defs.' Mot. for Summ. J., Dkt. No. 88.) The Plaintiffs claim that, due to the Paradise Inn's failure to properly maintain its potable water distribution system, colonies of legionella bacteria were able to form in unsafe levels. Ms. Licari alleges that she incurred significant medical expenses and suffered permanent injuries and disabilities as a result of acquiring Legionnaires' disease.

The Licaris presented evidence to show that Ms. Licari was not the only guest of the Paradise Inn to contract Legionnaires' disease. On November 9, 2009, the Centers for Disease Control and Prevention (CDC) notified the Utah Department of Health (UDOH) of two cases of

Legionnaires' disease in people who had both stayed at the Paradise Inn.  (*Id.*)  A subsequent

investigation by the CDC, the UDOH, and other Utah public health organizations determined that

five cases of Legionnaires' disease occurred between June 2009 and December 2009 in patients

whose only commonly shared trait was that they all stayed at the Paradise Inn.  The five people

who were known to have contracted the disease included Ms. Licari.  The investigation did not

uncover any Utah residents who became ill.  (*Id.*)

The Paradise Inn is owned by Paradise Resources, LC (formerly known as Paradise

Resources, Ltd.) and operated by Paradise Management, Inc.  Don W. Fullmer is the president of

Paradise Management, Inc.[1]  On September 29, 1995, Mr. Fullmer entered into a Membership

Application and License Agreement (the License Agreement) with Best Western under which

Mr. Fullmer became a member of Best Western and the Paradise Inn became a licensee facility.

According to an affidavit submitted by Cheryl D. Pollack, Best Western's Director of Member

Care and Development Administration, Best Western is a non-profit membership corporation

located in Arizona whose members are the owners and operators of independently owned hotels,

motels, and resorts.  In addition to licensing its trade name for a fee to members, Best Western

also provides its members with goods and services, such as access to a central reservation

system.  Paragraph 17 of the License Agreement that Mr. Fullmer executed with Best Western

states that "the relationship of Best Western to its members is one of an independent contractor.

Neither party has the power to obligate or bind the other in any way."  (Pollack Aff. ¶ 5, Dkt. No.

_____

[1]In this opinion, the court will refer to Paradise Resources, LC; Paradise Management, Inc.; and Mr. Fullmer as, collectively, the Paradise Inn or the Paradise Inn Defendants.  These Defendants have not submitted any argument about why they should be differentiated for purposes of the motions that are before the court.

60.)  The License Agreement emphasizes that Best Western has no responsibility for the use, condition, or safety of its member hotels.

Through Ms. Pollack's affidavit, Best Western asserts that its has no ownership interest in the Paradise Inn and does not participate in the management or maintenance of the hotel. (Pollack Aff. ¶¶ 6-7, 9, 11.)  Instead, Best Western establishes membership standards related to the condition and operation of member hotels through its Bylaws and through its Rules and Regulations, which are adopted by the members themselves.  (*Id.* ¶ 13.)  Best Western monitors the compliance of its member hotels with these standards and provides members with training and other materials to assist in the management of the members' respective facilities.  (*Id.*)  But Best Western insists that it does not have the authority to mandate the manner in which a hotel is run and maintained, and that its only remedy for a violation of its standards is to revoke a hotel's membership and terminate its right to use Best Western's name and its reservation and marketing system.  (Def.'s Reply Mem., at 5, Dkt. No. 83.)

ANALYSIS

## I.    Standard of Review

The court grants summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court "view[s] the evidence and make[s] all reasonable inferences in the light most favorable to the nonmoving party."  N. Natural Gas Co. v. Nash Oil & Gas, Inc., 526 F.3d 626, 629 (10th Cir. 2008).  The court applies Utah law in this diversity case.  *Wood v. Eli Lilly & Co.*, 38 F.3d 510, 512 (10th Cir. 1994).

**II.     Motion for Summary Judgment on the Issue of Duty**

The Paradise Inn Defendants' Motion for Summary Judgment on the Issue of Duty comprises a number of arguments: 1) whether the Paradise Inn owed the Licaris a duty of care; 2) whether the doctrine of res ipsa loquitur applies to these facts; 3) whether the Licaris have failed to state a claim for breach of contract; and 4) whether Mr. Licari's claim for loss of consortium fails.  The court will address the loss of consortium argument separately when it analyzes the Paradise Inn Defendants' separate Motion for Partial Summary Judgment on this issue.

A.  Duty of Care

The Paradise Inn Defendants argue that the Licaris' causes of action for negligence, vicarious liability, and loss of consortium all fail because the Paradise Inn did not owe the Licaris a duty of care.  The court disagrees.  While the Paradise Inn Defendants contend that they had no duty to investigate the Paradise Inn's water supply, the court finds that these Defendants have construed the concept of duty too narrowly.

Under Utah law, an innkeeper owes her guests a duty of reasonable care as to the safety of the premises.  The Utah Supreme Court is clear on this point: "We prefer to follow the long established doctrine that the duty of the innkeeper is to keep his hotel premises in a reasonably safe condition for his guests and that he must exercise reasonable care to protect his guests from personal injury . . . ." *Moore v. James*, 297 P.2d 221, 223 (Utah 1956).  *See also Mitchell v. Pearson Enterprises, Inc.*, 697 P.2d 240, 243 (Utah 1985) ("An innkeeper is not an insurer of the safety of its guests but owes to them ordinary care to see that the premises assigned to them are reasonably safe for their use and occupancy.").  Given the relationship between innkeepers and

guests established by Utah state law, the Paradise Inn owed a duty of ordinary care to maintain a safe environment for the Licaris.

Even though the Paradise Inn owed this duty, the Paradise Inn Defendants could still prevail on their Motion for Summary Judgment if they showed that no reasonable jury could find that they breached their duty. While the Paradise Inn Defendants did not frame their argument in these terms, the court will nevertheless consider whether the evidence provided by the Paradise Inn demonstrates the absence of any genuine dispute of material fact.

The question of whether the Paradise Inn Defendants breached their duty to the Licaris is dependent on the specific facts of the case: "In the exercise of ordinary care, the amount of caution required will vary with the nature of the act and the surrounding circumstances." *Mitchell*, 697 P.2d at 243. The Paradise Inn Defendants argue that there was no reason that they should have tested the hotel water for the presence of legionella because the Paradise Inn received its water from Fillmore City. But the Plaintiffs have submitted evidence that Fillmore's water supply was not the source of Ms. Licari's illness. While the CDC report revealed five cases of Legionnaires' disease diagnosed in guests who had stayed at the Paradise Inn, there were no reported cases among residents of Fillmore.

The Plaintiffs contend that Ms. Licari contracted the disease because of a buildup of the bacteria caused by the Paradise Inn's failure to update its water systems. The Plaintiffs' expert, Kenneth Teeters, submitted a report in which he claims that the Paradise Inn did not manage and maintain its water systems according to industry standards. (Pls.' Opp. Mem., Ex. 3, Dkt. No. 88.) The Paradise Inn points out that Mr. Teeters, when acting as an expert for a hotel in another case, has previously stated that the hotel industry standard does not require testing water for

legionella.  (*See* Teeters Expert Report in *Sapiro v. Sunstone Hotels Investors*, Defs.' Reply Mem., Ex. A, Dkt. No. 96.)  But the Paradise Inn Defendants once again construe the relevant legal question too narrowly.  Even if there is no industry standard concerning legionella testing specifically, the Plaintiffs need only show that the Paradise Inn failed to exercise ordinary care in the maintenance of its water systems and that Ms. Licari's exposure to a waterborne pathogen was a foreseeable result of this failure.  Viewing Mr. Teeters's report and the facts of the case in the light most favorable to the Plaintiffs, a reasonable jury could find that the Plaintiffs have carried their burden on this issue.

The Paradise Inn Defendants emphasize that they had no previous knowledge of any problems with the water at the Paradise Inn.  They contend that no duty can arise unless a party has "knowledge or notice that his act or omission involves danger to another."  *Missouri-Kansas-Texas R.R. Co. v. Ingram*, 322 F.2d 289, 291 (10th Cir. 1963).  But a jury could find that a reasonable person should be on notice that a poorly maintained water system might result in harm to the guests of a hotel in a variety of ways, including the possibility that a guest would be exposed to contaminated water on the premises.  As discussed above, it is not necessary that the Paradise Inn Defendants had specific knowledge of a legionella problem, but merely that the Paradise Inn failed to exercise reasonable care to ensure that the water used by its guests was not contaminated by any number of pathogens.

Finally, the Paradise Inn Defendants note that the standard of care in the hotel industry requires properties to comply with local and state regulations related to sanitation.  Because the Plaintiffs have identified no regulations that require a hotel to test its water for legionella, the Paradise Inn argues that it has satisfied the appropriate standard of care.  But compliance with

7

these regulations, which establish minimum requirements for the safety and cleanliness of hotels, does not insulate the Paradise Inn Defendants from an action for negligence, which is a matter of state common law.  While the Paradise Inn may point to state and local regulations as evidence that a reasonable hotel would not have performed any different or additional maintenance of its water system, the Plaintiffs are free to put forth evidence that the general standard of care in the hotel industry required more than the minimum level of maintenance mandated by the regulations.

For the reasons stated above, the Paradise Inn Defendants' Motion for Summary Judgment is DENIED on the issue of whether the Paradise Inn owed the Licaris a duty of care.

### B.  Res Ipsa Loquitur

The Licaris assert a separate cause of action against the Defendants for res ipsa loquitur, which is a theory that may be used to prove that an accident was caused by negligence under certain circumstances.  The doctrine of res ipsa loquitur is only recognized when

> (1) The accident was of a kind which, in the ordinary course of events, would not have happened had the defendant used due care, (2) the instrument or thing causing the injury was at the time of the accident under the management and control of the defendant, and (3) the accident happened irrespective of any participation at the time by the plaintiff.

*Moore*, 297 P.2d at 224.  The Paradise Inn Defendants contend that the Licaris' claim for res ipsa loquitur fails because the Licaris cannot establish that the water supply was under the exclusive management or control of the Paradise Inn.  The Paradise Inn Defendants also dispute the persuasive value of tests cited by the Plaintiffs which purportedly show that the chlorine in the public water supplied by Fillmore City was absorbed by the hotel's water system, leaving no residual chlorine at the hotel taps.  The Plaintiffs respond that there is no evidence that anyone in

8

Fillmore became ill with Legionnaires' disease and that therefore the legionella bacteria must have proliferated in the Paradise Inn's water system after the water was in the Paradise Inn's exclusive control. The court agrees with the Licaris. The Plaintiffs survive summary judgment on this issue because they have provided sufficient evidence to show that the water supply, at the time it became contaminated, was in the exclusive control of the Paradise Inn Defendants.

The court notes that, while the Plaintiffs have pled res ipsa loquitur as a separate claim, it is simply an alternative means for the Licaris to present a case of negligence to the jury even if the Licaris do not have knowledge of the specific act of negligence that caused Ms. Licari's injury. Whether a plaintiff has established the requisite foundation for a res ipsa loquitur instruction is a question of law for the court to decide, and such an instruction is not appropriate in every negligence action. *Walker v. Parish Chem. Co.*, 914 P.2d 1157, 1161 (Utah 1996). "Since the res ipsa loquitur instruction permits the jury to infer negligence from the happening of the accident alone, there must be a basis either in common knowledge or expert testimony that when such an accident occurs, it is more probably than not the result of negligence." *Talbot v. Dr. W. H. Droves' Latter-Day Saints Hosp.*, 440 P.2d 872, 874 (Utah 1968). The Plaintiffs will need to make this showing before the court permits the jury to receive an instruction on res ipsa loquitur. In addition, it appears that the Plaintiffs may present evidence that the buildup of legionella bacteria was caused by the Paradise Inn's failure to maintain its water systems. Such a specific allegation renders an instruction on res ipsa loquitur superfluous because there is "nothing to infer about the cause of the accident so far as it pertains to this theory of responsibility." *Kusy v. K-Mart Apparel Fashion Corp.*, 681 P.2d 1232, 1236 (Utah 1984), *overruled on other grounds by Randle v. Allen*, 862 P.2d 1329, 1336 (Utah 1993). Instead, "the

real question at issue is whether the [actions and omissions] performed by Defendant were such that they constituted a breach of Defendant's duty of care, and the res ipsa loquitur doctrine has no application to such a question." *Matheson v. Marbec Investments, Inc.*, 173 P.3d 199, 204 (Utah Ct. App. 2007).

For these reasons, the Paradise Inn Defendants are not precluded from objecting to a res ipsa loquitur instruction at trial and their Motion for Summary Judgment on the issue of res ipsa loquitur is DENIED WITHOUT PREDJUDICE.

### C.  Breach of Express and Implied Warranties

The Licaris have filed a cause of action for breach of both express and implied warranties against the Defendants.  They contend that, in the Guest Directory that can be found in every room at the hotel, the Paradise Inn tells its guests that it has a "commitment to service and value" and hopes to "create some of the comforts of home during your stay."  (*See* Pls.' Opp. Mem., Ex. 12, Dkt. No. 88.)  The court agrees with the Paradise Inn Defendants that these representations do not rise to the level of express warranties concerning the safety of the premises or the water.  As a result, the court dismisses the Plaintiffs' claim for breach of express warranties.

The court is also persuaded by the Paradise Inn's argument that Utah state law does not recognize a cause of action for an implied warranty of habitability for hotel rooms, which would be the only source of an implied warranty in this case.  *See Moore v. James*, 297 P.2d 221, 223 (Utah 1956).  In *Moore*, the Utah Supreme Court considered whether breach of an implied warranty of habitability was available as a cause of action to a plaintiff who was injured when the leg fell off a bathtub in a hotel, causing the bathtub to collapse.  The Court held that "[t]o adopt the rule of breach of implied warranty in the case at bar would extend the rule further than courts

have heretofore done and would make the innkeeper an insurer of the guest's safety, thereby eliminating the necessity of proving lack of due care or negligence on the part of the innkeeper." *Id.* Because the Court declined to extend liability so far, the Court dismissed the theory of an implied warranty of habitability for hotel rooms.

The Plaintiffs argue that the court should ignore the plain language in *Moore* in favor of a later Utah Supreme Court case: *Mitchell v. Pearson Enterprises*, 697 P.2d 240 (Utah 1985). In *Mitchell*, the Court did not address the plaintiff's implied warranty theory because it decided the case on other grounds. The Court stated: "[W]e do not decide the issue of whether this jurisdiction would recognize a cause of action for breach of implied or express warranties of safe accommodation and habitability . . . ." *Id.* at 247. Given this dicta from the Utah Supreme Court, the Licaris contend that it is an open question whether Utah state law recognizes an implied warranty of habitability for hotel rooms. The court is not persuaded by this argument. While it is unclear why the Utah Supreme Court in *Mitchell* did not cite its previous holding in *Moore*, there is no indication that *Moore* has been overruled. Given the clear statement in *Moore* and the ambiguous statement in *Mitchell*, the court finds that Utah does not currently recognize an implied warranty of habitability for hotel rooms.

As a result, the court GRANTS the Paradise Inn Defendants' Motion for Summary Judgment on the issue of the Licaris' claim for breach of an express or an implied warranty.

## II.    Best Western's Motion for Summary Judgment

The Licaris assert liability against Best Western based on a number of theories. First, the Licaris contend that Best Western is directly liability to them because Best Western owed the Plaintiffs a duty to reasonably maintain and inspect the Paradise Inn's water systems and Best

Western breached this duty. Second, the Licaris allege that Best Western is vicariously liable for the actions of the Paradise Inn Defendants based on a theory of actual agency because Best Western retained sufficient control over the Paradise Inn to subject the organization to liability. Finally, the Plaintiffs maintain that Best Western is vicariously liable under a theory of apparent authority because Best Western represented the Paradise Inn to be its apparent agent.

A. Direct Liability

The Licaris argue that, in Utah, a licensor of a hotel trademark owes a duty of care to the guests of a hotel that makes use of that trademark. While the Plaintiffs admit that they are unable to find any cases establishing the existence of this duty, the Plaintiffs encourage the court to hold that Utah courts would recognize such a duty under the guidelines set forth in the recent case of *B.R. ex rel. Jeffs v. West*, 275 P.3d 228 (Utah 2012).

The *Jeffs* case addressed the question of whether a physician owes a duty of care to third parties to ensure that the combination of medications prescribed to a patient do not cause an outburst that could harm those third parties. The Utah Supreme Court reviewed a number of factors that Utah courts have considered in determining whether a defendant owes a duty to a plaintiff. These factors include: "(1) whether the defendant's allegedly tortious conduct consists of an affirmative act or merely an omission; (2) the legal relationship of the parties; (3) the foreseeability or likelihood of injury; (4) public policy as to which party can best bear the loss occasioned by the injury; and (5) other general policy considerations." *Id.* at 230 (citations omitted). The Court noted that these factors receive more or less weight depending on the specific factual circumstances of the case. Analyzing the facts of *Jeffs*, the Court focused on the first factor and held that the physician's affirmative act of prescribing the medication gave rise to

a duty of care between the physician and those who were injured by the patient's conduct, even in the absence of a special relationship between these parties. *Id.* at 233.

Here, the Licaris have not alleged that Best Western committed any affirmative act that would cause the company to owe a duty of care to the guests of its member hotels. At most, the Licaris contend that Best Western was negligent in its inspections of the Paradise Inn because it did not detect the presence of legionella bacteria in the water supply or otherwise notice that the Paradise Inn water system was not properly maintained. These alleged omissions do not impose a duty of care on Best Western under *Jeffs*, and given the Licaris' failure to find any cases establishing that a licensor like Best Western owes a duty of care to the guests that stay in the hotels of its members, the court finds that Best Western cannot be held directly liable to the Licaris for negligence.

### B. Vicarious Liability – Actual Agency

The Licaris assert that, even if Best Western cannot be held directly liable for Ms. Licari's injuries, Best Western is still vicariously liable to them because the Paradise Inn is Best Western's agent. A number of jurisdictions, including Utah, distinguish between agents and independent contractors when determining whether to impose liability under the doctrine of respondeat superior, or vicarious liability. Whereas a company is liable for the acts of its agents or employees, the company is not liable for the acts of independent contractors. *See Foster v. Steed*, 432 P.2d 60, 62 (Utah 1967). Under Utah state law, the court examines the amount of control that the company exerted over the injury-causing party to determine whether this party was the company's agent, or merely an independent contractor:

In general, the determinative question has usually been posed as one of 'control',

13

the view being that if the defendant controls, or has the right of control, the manner in which the operations are to be carried out, the defendant is liable as a master, while, if the control extends only to the result to be achieved, the actor is regarded as an independent contractor, and the defendant is liable under neither respondeat superior nor the workmen's compensation statutes.

*Id.*

In *Foster*, the Utah Supreme Court found that Texaco did not maintain sufficient control over the operation of a service station at which the plaintiff was burned during an accident. The service station was required "to keep the premises, buildings and equipment in good repair and in a clean, safe and healthful condition," and the lease between Texaco and the service station provided that Texaco could terminate the lease in the case of breach. *Id.* at 61, 63. But the Supreme Court found this obligation was consistent with a landlord-tenant relationship and did not necessarily indicate an agency relationship. *Id.* at 63. In contrast, a number of other facts indicated that Texaco had no control over the day-to-day operations. The service station could buy products from sources other than Texaco, the operating expenses were to be payed by the operators of the service station, and the operators could hire and fire their employees and set their own hours of operation without making a report to Texaco. *Id.* The Utah Supreme Court held that "[n]one of the evidence cited by plaintiff indicates Texaco retained control of the day-to-day operation but, rather, merely influenced the result to be achieved, revealing an independent contractor status." *Id.* Accordingly, the Utah Supreme Court found that summary judgment should have been granted in favor of Texaco.

While the Utah Supreme Court's ruling in *Foster* provides the framework for the analysis that the court must follow in this case, a number of factors persuade the court that summary judgment is not appropriate here. Unlike the lease agreement at issue in *Foster*, the Rules and

Regulations that the Paradise Inn must follow to maintain its affiliation with Best Western contain far more detailed requirements for the day-to-day maintenance and operation of the hotel. (*See* Rules and Regulations, Dkt. No. 63-1.) The Rules and Regulations describe how the Paradise Inn must run its lobby and front office (Section 600), how it should keep its buildings, grounds, and public areas (Section 700), how it should regulate its housekeeping department (Section 800) and how it should maintain its guest rooms and bathrooms (section 900). The details in these regulations are specific enough to include information about alarm clocks, snow removal, and the food that must be served to qualify for different types of breakfast. In addition, the rules provide for quality control inspections, which may be unannounced. (Rules § 500.15-18.) During these inspections, a member hotel is assigned points for various aspects of hotel operation, and "a point loss of more than 50 points in housekeeping, or a point loss of more that 100 points in maintenance may result in stricter and more frequent inspection requirements." (Rules § 500.17.) If a property receives a low score, it may be placed into probationary status until it improves its deficiencies. (*Id.*) These rules and guidelines for inspections are far more specific than any provision of the service station lease agreement that was at issue in *Foster*. Given these detailed regulations, a jury could find that Best Western exerts a sufficient degree of control to designate the Paradise Inn as its agent.

A number of courts in other jurisdictions have similarly found that summary judgment is inappropriate where there are factual questions about how much control a franchisor or licensor exerts over an independently owned hotel property. For instance, in a case involving the franchisor Holiday Inns, Inc., and the franchisee Interstate Inns, Inc., the Fifth Circuit held:

> There is considerable evidence in the record indicating a high degree of control

15

over Interstate by Holiday Inns, Inc.  The license agreement between the two
parties required Interstate to build and maintain the facility as specified by the
parent company, and to observe strictly the 'Rules of Operation' as promulgated
by the Holiday Inns, Inc., board of directors.  Interstate was also required to permit
regular inspection of [the property] by Holiday Inn inspectors in order to insure
compliance with the Rules of Operation.  The agreement further provided that any
substantial violation of its terms would give Holiday Inns, Inc., the right to cancel
Interstate's license. . . .  We believe that this was sufficient evidence from which a
jury could reasonably conclude that Holiday Inns, Inc., should be liable . . . .

*Wood v. Holiday Inns, Inc.*, 508 F.2d 167, 175 (5th Cir. 1975).  Similarly, the Third Circuit has

held that whether the control retained by a franchisor is sufficient to establish a principal-agent

relationship depends in each case upon the nature and extent of such control as defined by the

franchise agreement or by the actual practice of the parties.  *Drexel v. Union Prescription Ctrs.,*

*Inc.*, 582 F.2d 781, 786 (3d Cir. 1978).  Notwithstanding a written provision in the franchise

agreement at issue in *Drexel* that strictly limited the liability of the defendant, the Third Circuit

found that, as a result of clauses granting the defendant the right of inspection and requiring the

subject property to adhere to the defendant's "uniformly high standards of service, appearance,

quality of equipment, and proved methods of operation," the court could not hold as a matter of

law that a principal-agent relationship did not exist.  *Id.* at 787.  Other cases have followed the

reasoning of these courts.  *See, e.g.*, *Drummond v. Hilton Hotel Corp.*, 501 F. Supp. 29, 31 (E.D.

Penn. 1980) ("[T]he issue of Hilton's right to control any operations of the hotel is an issue for

jury determination."); *Ross v. Choice Hotels Int'l, Inc.*, 882 F. Supp. 2d 951, 956 (S.D. Ohio

2012) ("This Court agrees with Plaintiffs that there is a genuine issue of material fact over the

degree of control exercised by Choice Hotels over GNA.").

The court has found two cases from other district courts supporting this view that concern

Best Western specifically.  In *Acerra v. Best Western Internataional, Inc.*, the United States

16

District Court for the District of New Jersey noted a number of ways in which Best Western exerted control over its members, including:

> (1)     defendant conducted a quality assurance evaluation before affiliation status was granted,
>
> (2)     defendant provided its members with a unitary reservation system, advertising and other related services,
>
> (3)     defendant periodically conducted a quality insurance inspection of its member establishments,
>
> (4)     defendant promulgated membership rules and regulations and
>
> (5)     defendant issued renovation and refurbishing guidelines to its members.

*Acerra v. Best Western Int'l, Inc.*, 1992 WL 406499, at *3 (D.N.J. Dec. 22, 1992). The Licaris have demonstrated that at least the first four of these factors are applicable to Best Western's relationship with the Paradise Inn. Considering these factors, the district court in *Acerra* ruled that "there exists a genuine issue of material fact as to whether this control of its members' operations is sufficient to hold Best Western International, Inc. legally liable for plaintiff's injuries." *Id.*

Similarly, the United States District Court for the District of Rhode Island found that a jury should determine Best Western's liability on an agency theory. *Giamo v. Congress Motor Inn, Corp.*, 847 F. Supp. 4, 9 (D.R.I. 1994). Among other factors influencing its decision, the district court cited the extensive reach of the regulations that Best Western required its members to follow:

> [T]he 1991 Rules and Regulations direct the member as to the operations of the reservation system, administration, lobby and front office, buildings, grounds, and public areas, house-keeping, guest rooms and bathrooms, and logo items and room supplies. In fact, the 1991 Rules and Regulations go so far as to direct the

facility as to snow removal.

*Id.*

Best Western argues that there are cases in which the court has not been persuaded that liability should be imposed on a licensor or franchisor in these circumstances. Best Western points to a Pennsylvania Superior Court case that distinguished the Third Circuit *Drexel* case, disagreed with the district court *Drummond* case, and found that Best Western could not be held liable for a sexual assault that occurred in one of its member's hotels that was independently owned by Penn Stroud:

> It is clear from the record that Penn Stroud owned and operated the Inn and had full, day-to-day control, while the most significant "control" Best Western possessed was a threat to take away the use of its trade name. As such Best Western did not have the necessary control over Penn Stroud to establish the existence of a master-servant relationship; consequently, Best Western cannot be held vicariously liable for the alleged negligence of Penn Stroud under an actual agency theory.

*Myszkowski v. Penn Stroud Hotel, Inc.*, 634 A.2d 622, 628 (Penn. 1993). Similarly, the United States District Court for the District of South Carolina found no agency relationship in a case that, while filed against Sheraton and not Best Western, similarly involved a guest of the hotel who allegedly contracted Legionnaires' disease, in this instance from the whirlpool. *Triplett v. Soleil Grp., Inc.*, 664 F. Supp. 2d 645 (D.S.C. 2009). The district court was not persuaded by the plaintiff's argument that Sheraton controlled the hotel by conducting periodic inspections, holding that "license agreements and brand standard inspections merely allow franchisors to maintain 'uniform service within, and public good will toward, the [franchisor's] system.'" *Id.* at 653 (citation omitted) (citing cases supporting this proposition). The court noted that "Plaintiffs have failed to offer any evidence that [the defendants] exerted control over the day-to-day

maintenance and operation of the Hotel's swimming pool or whirlpool tub." *Id.* at 651.

The court disagrees with the reasoning in this line of cases for two reasons. First, the court believes that the question of control must be considered in relation to the instrumentality that allegedly caused a plaintiff's injury. Here, Ms. Licari asserts that she contracted Legionnaires' disease as a result of the Paradise Inn's failure to adequately maintain an outdated water system. While Best Western contends that it did not have any control over the day-to-day operation of this water system, the Licaris have presented evidence that an unhealthy buildup of legionella bacteria is a long-term problem and not one that is caused by errors in daily maintenance. Given that Best Western periodically inspects the Paradise Inn and grades its performance in a number of areas, including maintenance, and given the specificity with which the Rules and Regulations govern the upkeep of the hotel property, a jury could find that Best Western exercised the requisite control to be held liable through an agency relationship.

Second, the Licaris have asserted that Best Western is liable on the alternative theory of apparent authority. As discussed below, the court finds that the Licaris have presented sufficient evidence to survive summary judgment under this theory. Because the court finds that the cases applying the apparent authority test more uniformly support the Licaris' position than the cases discussed above that analyze the question of control, the court bases its decision to deny summary judgment, in part, on this alternative theory of liability. *See Wood*, 508 F.2d at 175 ("However, we do not base our holding on the degree of control that Holiday Inns, Inc., maintained over [the hotel manager]. Rather we believe that [the plaintiff] presented more than insubstantial evidence as to the liability of Holiday Inns, Inc., on a theory of apparent authority."). Since Best Western must anyway defend itself on the theory of apparent authority,

the court will also allow the Licaris to present their theory of actual agency to the jury, and the court follows the line of cases that support this position.

    C.  Vicarious Liability – Apparent Authority

Even if the Paradise Inn is not the actual agent of Best Western, the Licaris assert that Best Western is nevertheless liable to them under a theory of apparent authority.  According to this theory, "a party may be held to be the agent of another on the basis that he has been held out by the other to be so in a way that reasonably induces reliance on the appearances." *Crinkley v. Holiday Inns, Inc.*, 855 F.2d 156, 166 (4th Cir. 1987).  Utah state law emphasizes that it is the actions of the alleged principal and not the agent that subject the principal to liability under this theory: "Where corporate liability is sought for acts of its agent under apparent authority, liability is premised upon the corporation's knowledge of and acquiescence in the conduct of its agent which has led third parties to rely upon the agent's actions." *City Elec. v. Dean Evans Chrysler-Plymouth*, 672 P.2d 89, 90 (Utah 1983).  The authority of the agent is not apparent "merely because it looks so to the person with whom he deals.  It is the principal who must cause third parties to believe that the agent is clothed with apparent authority." *Id.*

Best Western argues that it has not clothed the Paradise Inn with any apparent authority. While the Paradise Inn uses Best Western's centralized reservation system and uses the Best Western trademark, both the reservation system and the use of the trademark are accompanied by requirements imposed by Best Western that the Paradise Inn include notification of its independent ownership and operation.  The Licaris dispute Best Western's assertion and point out that they specifically relied on the roadside Best Western sign, which did not say anything about independent ownership, when pulling off the highway and deciding to stay the night in

Fillmore.  (*See* Catherine Licari Dep. 37, Dkt. No. 73-2.)  Taking the facts presented in the light most favorable to the Plaintiffs for the purposes of this motion, the court therefore assumes that the signs and other information on which the Licaris relied when they decided to stay at the Best Western in Fillmore did not adequately communicate to them that the Paradise Inn was independently owned and operated.

A number of the cases cited above also support the proposition that, given these facts, the question of whether Best Western held out the Paradise Inn as its agent is an issue of fact that must go to the jury.  *See Giamo*, 847 F. Supp. at 9 ("Based upon these materials, it is certainly arguable that a guest, such as plaintiff, could conclude that the Inn was owned by Best Western International and operated by its employees."); *Wood*, 508 F.2d at 176 ("A jury could therefore reasonably conclude that the license agreement required the Phenix City facility to be of such an appearance that travelers would believe it was owned by Holiday Inns, Inc."); *Crinkley*, 844 F.2d at 167 ("We think that a jury could reasonably conclude that the Holiday-Inn Concord was operated in such a way as to create the appearance that it was owned by Holiday Inns, Inc. and that this was one of the purposes of the franchise agreement."); *Drummond*, 501 F. Supp. at 32 ("Therefore, this court concludes that whether Hilton held itself out to the public as the owner or operator of the Hilton Inn is a proper issue of fact for determination by a jury."); *Sims v. Marriott Int'l, Inc.*, 184 F. Supp. 2d 616, 617 (W.D. Ken. 2001) ("Plaintiffs have presented sufficient facts that Marriott appeared to operate the Nassau Marriott and that Mrs. Sims relied on that appearance when selecting the hotel.").

The court agrees with these cases and finds that a jury could determine that the extensive regulations governing the use of Best Western trademarks demonstrate that it was Best Western's

actions that caused the Licaris to believe they were staying at a hotel owned and operated by Best

Western.  As the United States District Court for the District of Ohio noted in *Ross*,

> In reaching these conclusions, the Court is cognizant of Choice Hotels' argument
> that it did not hold [the franchisee and manager] out as its agents, but rather, [the
> franchisee and manager] have held out themselves as Choice's agent.  What
> Choice Hotels does not credit is that reasonable inferences suggest that Choice
> Hotels enabled if not actively endorsed such holding out; that is the point of
> apparent agency or agency by estoppel.

*Ross*, 882 F. Supp. at 956.  Even though Best Western required the Paradise Inn to assert its

independent status on signs and other publications, a jury could find that, on balance, the

regulations that Best Western imposed on the Paradise Inn were designed to create the

appearance that the Paradise Inn was owned and operated by Best Western.

Best Western again points the court to the *Myszkowski* and *Triplett* cases that are

discussed above.  The court finds that these cases are distinguishable from the facts at issue here.

In *Myszkowski*, there was no evidence that plaintiff, a disc jockey who was sexually assaulted in

a Best Western property, relied to any degree on the Best Western name when she chose to

accept a job there.  *Myszkowski*, 634 A.2d at 329.  Here, there is no question that the Licaris

claim to have relied on the Best Western name when choosing to stay at the Paradise Inn.  And in

*Triplett*, which involved a number of plaintiffs who reserved a hotel for a reunion but were not

overnight guests there, the district court distinguished the case law cited above on the grounds

that it was contrary to South Carolina law.  The court's decision to deny summary judgment in

this case is not contrary to Utah law.  In *Foster*, the Utah Supreme Court found that the Texaco

sign alone did not create an agency relationship for the purposes of liability, but the Court did not

provide any specific discussion of the apparent authority theory.  *See Foster*, 432 P.2d at 63

22

(discussing control but not apparent authority).  There was no evidence presented in that case that the plaintiff had stopped at the service station because of the Texaco name.  In the absence of any guidance to the contrary, the court concludes that Utah state courts would follow the number of decisions discussed above holding that the existence of apparent authority where there is definite evidence of reliance on the part of the plaintiff is a factual question that must go to the jury on a record like the one presented here.

For these reasons, the Licaris may present a jury with evidence that Best Western should be held liable for the Plaintiffs' injuries under a theory of apparent authority.  As a result, Best Western's Motion for Summary Judgment is DENIED.

## III.    Loss of Consortium

The Paradise Inn Defendants have filed a separate motion seeking summary judgment on Mr. Licari's loss of consortium claim.  The Paradise Inn Defendants argue that the Plaintiffs have not established the requisite elements to proceed to trial on this claim.

Under Utah state law, "[t]he spouse of a person injured by a third party . . . may maintain an action against the third party to recover for loss of consortium."  Utah Code Ann. § 30-2-11(2).  The statute defines such injury as

> a significant permanent injury to a person that substantially changes that person's lifestyle and includes the following:
>
> > (i)     a partial or complete paralysis of one or more of the extremities;
> >
> > (ii)    significant disfigurement; or
> >
> > (iii)   incapability of the person of performing the types of jobs the person performed before the injury.

*Id.* § 30-2-11(1)(a).  The Utah Supreme Court has ruled that the words "and includes" should not

be read to introduce an exhaustive list. *Boyle v. Christensen*, 251 P.3d 810, 819 (Utah 2011). While a plaintiff may satisfy his burden to show that his spouse suffered an injury by presenting evidence that one of the statutory categories describes his spouse's injury, he need not do so to prevail on his loss of consortium claim. *Id.* at 820.

While the parties agree that Ms. Licari is not paralyzed, the parties argue about whether Ms. Licari suffered a significant disfigurement or whether she is incapable of performing the types of jobs that she performed before her illness. But under *Boyle*, Ms. Licari does not need to demonstrate that she satisfies any of the examples provided by the statute. As a result, the court does not address whether the dispute between the parties on these points is genuine. Instead, the court need only consider whether the Licaris have submitted competent evidence to show that Ms. Licari suffered a "significant permanent injury" that "substantially change[d]" her life. *See* Utah Code Ann. § 30-2-11(2). The court finds that the Licaris have met their burden on this point by submitting their own depositions and the depositions of other family members who testify that Ms. Licari has been consistently fatigued and irritable since her illness, that she suffers more respiratory problems than she did before, and that she has experienced difficulty in her marriage. It is appropriate for a jury to decide whether these facts rise to the level of an injury as defined by the statute.

Accordingly, the Paradise Inn Defendants' Motion for Partial Summary Judgment on Mr. Licari's loss of consortium claim is DENIED WITHOUT PREJUDICE.

## CONCLUSION

For the foregoing reasons, the court ORDERS as follows:

1)      Best Western's Motion for Summary Judgment (Dkt. No. 57) is DENIED.

24

Plaintiffs may proceed on their claims of vicarious liability against Best Western under the theories of actual and apparent agency.

2) The Defendants' Motion for Summary Judgment on the issue of duty (Dkt. No. 71) is DENIED as to the question of whether the Defendants owed the Plaintiffs a duty of care; DENIED WITHOUT PREJUDICE as to the res ipsa loquitur claim; and GRANTED as to the breach of contract claim. Accordingly, the Plaintiffs' Second Cause of Action for breach of contract is DISMISSED WITH PREJUDICE.

3) The Defendants' Motion for Partial Summary Judgment on Ms. Licari's medical expense damages (Dkt. No. 69) is DENIED WITHOUT PREJUDICE.

4) The Defendants' Motion for Summary Judgment on Mr. Licari's loss of consortium claim (Dkt. No. 67) is DENIED WITHOUT PREJUDICE.

The court will set a trial schedule in this matter by separate order. The court also ORDERS the parties to submit to mediation within the next forty-five days.[2] The parties should file a status report informing the court of the outcome of those proceedings within seven days after the mediation occurs.

DATED this 12th day of July, 2013.

BY THE COURT:

_____
ROBERT J. SHELBY
United States District Judge

_____

[2]The court will appoint a magistrate judge to serve as a mediator if necessary. The parties should file a request with the court if they wish the court to do so.